IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ERIC LAMAR ELLIS,                    §
                                     §
            Plaintiff,               §
                                     §
V.                                   §        No. 3:22-cv-675-N-BN
                                     §
RUBI GARZA LOPEZ and BRIAN           §
MARSHALL BARRIER,                    §
                                     §
            Defendants.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Eric Lamar Ellis brings this *pro se* civil rights action against two Irving police officers, Defendants Rubi Garza-Lopez (Garza) and Brian Marshall Barrier (collectively, the Officers) in their individual capacities, based on Ellis's detention and a subsequent search. *See* Dkt. Nos. 7, 8 (amend. compl.).

Chief United States District Judge David C. Godbey referred Ellis's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The Officers answered the amended complaint, asserting qualified immunity. *See* Dkt. No. 13. In response, the Court ordered the Officers to move for summary judgment on the defense. *See* Dkt. No. 15.

Ellis, shortly thereafter, filed a motion to strike the Officers' defense of qualified immunity, *see* Dkt. No 16, which the Court carried pending a ruling on the Officers' motion for summary judgment, *see* Dkt. No. 18. Ellis then filed his own motion for summary judgment, which he amended, essentially asking that the Court

deny the Officers qualified immunity. *See* Dkt. Nos. 19, 20.

And the Officers moved for summary judgment based on qualified immunity, s*ee* Dkt. No. 21-24, 26, to which Ellis responded, *see* Dkt. No. 25.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny Ellis's motions to strike and for summary judgment and grant the Officers' motion for summary judgment on qualified immunity, dismissing the claims against the Officers – and therefore Ellis's lawsuit – with prejudice.

## Applicable Background

Ellis alleges that the Officers unlawfully seized him and searched his vehicle without a warrant, probable cause, or reasonable suspicion, in violation of the Fourth Amendment. *See* Dkt. No. 7 at 3-4. He also alleges that the Officers violated the Eighth Amendment by instructing him to destroy marijuana found in his vehicle. *See id.* at 4. The Officers assert an entitlement to qualified immunity on, and so request dismissal of, these claims. *See* Dkt. No. 13 at 3.

As further explained below, Ellis, as the party asserting an injury, may only defeat summary judgment on qualified immunity by showing that the facts supported by evidence and viewed in the light most favorable to him demonstrate a constitutional violation. But Ellis failed to provide his own evidence, either in support of his motions or by verifying his pleadings. *See* Dkt. Nos. 7, 8, 16, 19, 20, 25. So, as background, the following facts are drawn from evidence offered by the Officers, including bodycam footage:

On August 4, 2021, the Officers and Officer Josh Weinschreider observed Ellis's vehicle parked at a city park at approximately 4:52 a.m., a time at which the park was closed. *See* Dkt. No. 21 at 5, 16. As the Officers and Officer Weinschreider approached the vehicle, they found Ellis inside either sleeping or unconscious. *See id.* at 5, 16, 25. All three officers scanned the vehicle with flashlights and stood close enough to smell the contents of the vehicle. *See id.* All three claimed they smelled marijuana coming from Ellis's vehicle's open windows. *See id.*

Within two minutes of all three officers approaching the vehicle, Ellis awoke, and Officer Garza asked him the exit the vehicle and proceeded to search him. *See* Dkt. No. 24 (Garza bodycam footage at 2:00-3:20). Letting him know that his vehicle smelled of marijuana, the Officers instructed Ellis to stay away from his vehicle and in the custody of Officer Weinschreider while the Officers searched the vehicle. *See* Dkt. No 21. at 9-10.

Upon hearing that his vehicle smelled of marijuana, Ellis put his nose to the vehicle windows and argued that it did not. *See* Dkt. No. 24 (Garza bodycam footage at 7:50). But, within approximately five minutes, Officer Garza found marijuana in Ellis's vehicle. *See* Dkt. No. 21 at 6. And, as the Officers searched Ellis's vehicle, Ellis admitted to Officer Weinschreider that marijuana was in the vehicle and that it would be "not hard to find." Dkt. No. 21 at 31.

After discovering the marijuana, the Officers allowed Ellis to choose to destroy his marijuana or receive a citation. *See id.* at 6, 17, 26. He chose to destroy it and was immediately released. *See id.*

## Legal Standards

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

If they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) ("Because qualified immunity is an immunity from suit, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.' It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); citations omitted)).

"[T]he doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph v. Bartlett*, 981 F.3d 319,

328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "These interests are distilled into a legal standard, an affirmative defense, that shields public officials sued in their individual capacities 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Phrased differently, this immunity "attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

The doctrine therefore "gives government officials breathing room to make reasonable but mistaken judgments[] and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted)); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015. "'Accordingly, "qualified immunity represents the norm," and courts should deny a defendant immunity only in rare circumstances.'" *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting, in turn, *Harlow*, 457 U.S. at 807)). *But see, e.g., Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) (calling for reconsideration of the doctrine); *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., statement respecting denial of cert.) (calling on his colleagues to, "in an appropriate case …

-5-

reconsider either our one-size-fits-all test or the judicial doctrine of qualified immunity more generally").

The "qualified-immunity inquiry is two-pronged." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

- Do "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600)

- Was "the right at issue … 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 3 F.4th at 133 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34; *cf. Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020) ("Fair notice requires clearly established law. That is, the law must 'clearly prohibit the officer's conduct in the particular circumstances before him' so 'every reasonable official' knows not to engage in that conduct." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); citing *al-Kidd*, 563 U.S. at 742)).

Under this standard, "[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officers] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officers did]." *Tucker*

*v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (internal quotation marks omitted) (citing, in turn, *Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know.")).

A court may "analyze the prongs in either order or resolve the case on a single prong." *Cunningham*, 983 F.3d at 191 (quoting *Garcia*, 957 F.3d at 600 (internal quotation marks omitted)). But addressing this affirmative defense on a motion for summary judgment is not exactly intuitive.

"A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right … whether or not qualified immunity is involved." *Joseph*, 981 F.3d at 329 (footnote omitted).

But, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Id.* at 329-30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *accord Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)). "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants

must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016)).

Once shifted, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). And, "[t]o rebut [a public official's] qualified immunity defense, [a] [p]laintiff[] must point to summary judgment evidence '(1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (citations omitted).

As to the first prong of the qualified-immunity inquiry, to overcome a public official's motion for summary judgment on qualified immunity, the plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury" – just as would be required "if the plaintiff did not face qualified immunity." *Joseph*, 981 F.3d at 330. That is, the plaintiff must defeat summary judgment by showing that "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," *Cunningham*, 983 F.3d at 190-91.

When considering this showing, the Court must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the Court need not do so if the plaintiff's "version 'is blatantly contradicted by the record, so that no

reasonable jury could believe it.'" *Joseph*, 981 F.3d at 325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); citing *Orr*, 844 F.3d at 590).

When accepting the plaintiff's well-supported version of the disputed facts, the Court must "view the facts and draw reasonable inferences in the light most favorable to" the plaintiff. *Id.* (footnote omitted). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see, e.g., Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam).

But, if, for example, "the [evidence] ... offer[ed] in opposition to summary judgment is neither sworn nor declared under penalty of perjury to be true and correct, it is not competent evidence." *Smith v. Palafox*, 728 F. App'x 270, 274 (5th. Cir. 2018) (per curiam) (cleaned up; quoting *Davis v. Fernandez*, 798 F.3d 290, 292 (5th Cir. 2015); citation omitted).

Additionally, while a court generally "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted), the Court must here "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene," *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing, in turn, *Scott*, 550 U.S. 372)).

In sum, "[w]hen one party's description of the facts is discredited by the record,

[a court] need not take his word for it but should view 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott*, 550 U.S. at 380-81); *accord Joseph*, 981 F.3d at 325 (Where a court "proceed[s] through the facts in detail, including the disputed facts, considering each officer's actions independently," it "draw[s] these facts from the record, prioritizing the video evidence." (footnotes omitted)); *see also Garcia v. Orta*, 47 F.4th 343, 350-51 & n.2 (5th Cir. 2022) (discussing the scope of *Scott*, including that its holding reaches beyond video evidence, to similar items in "the record" "capable of utterly discrediting the plaintiff's version of the facts" – including still photos, taser logs, and "what can be heard, and not just what can be seen, on a video" (citations omitted)).

But "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. So, "when qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (footnote omitted).

And "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191; *see also Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents.").

The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix*, 577 U.S. at 11). And

"[t]here are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

The first approach "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution],'" *Joseph*, 981 F.3d at 330 (footnote omitted); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "controlling authority – or a 'robust consensus of [cases of] persuasive authority' – that defines the contours of the right in question with a high degree of particularity." (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see also Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in [his] favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (internal quotation marks omitted)). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White*, 137 S. Ct. at 552 (quoting, in turn, *al–Kidd*, 563 U.S. at 742)). And a clearly established right must be defined "with specificity." *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500,

503 (2019) (per curiam)).

"This rule is a 'demanding standard.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 589). And "[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Nerio*, 974 F.3d at 575 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (internal quotation marks omitted)).

"While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph*, 981 F.3d at 330 (footnotes omitted); *accord Tucker*, 998 F.3d at 173-74 ("For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted); citing *Mullenix*, 577 U.S. at 14)).

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))).

"In other words, 'there must be adequate authority at a sufficiently high level

of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent*, 805 F.3d at 547).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590); *accord Batyukova*, 994 F.3d at 726.

"[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). So, under this alternative approach, qualified immunity should "not immunize those officials who commit novel, but patently 'obvious,' violations of the Constitution." *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)).

But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338; *see, e.g.*, *Tyson*, 42 F.3d at 520 ("It is obvious that the right to bodily integrity forbids a law enforcement officer from sexually abusing a person by coercing them to perform nonconsensual physical sex acts for his enjoyment"); *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 279 (5th Cir. 2022) ("Detaining Harris for more than six years after he should have been released under Supreme Court precedent and a state court order is a violation of clearly established law. Qualified immunity thus does not protect Huffman and Scott.").

In sum, "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam)); *see also Tyson*, 42 F.3d at 520 ("We have little trouble finding that the constitutional offense was obvious because the physical sexual abuse alleged here is a 'particularly egregious' and 'extreme circumstance[ ]' of assault by a state official." (quoting *Riojas*, 141 S. Ct. at 53-54)).

### Analysis

Again, because Ellis fails to provide verified pleadings or any other competent summary judgment evidence, the following analysis solely considers all three officers' body cameras and their respective affidavits.

### A. The facts from the record reflect that the Officers had probable cause – and therefore reasonable suspicion -- to search and seize Ellis's person.

"The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures." *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "A seizure must be 'justified at its inception.'" *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)). Indeed, the Constitution "contemplates searches and seizures based 'upon probable cause,'" *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (quoting U.S. CONST. amend. IV), such that "[w]arrantless searches and seizures are presumptively unreasonable, subject to certain exceptions," *McKinney*, 980 F.3d at 490 (citing *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)).

-14-

An exception applicable here is "that 'officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot.'" *Id.* (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing *Terry v. Ohio*, 392 U.S. 1 (1968))). Additionally, reasonable suspicion allows for a protective search where "the officer may conduct a pat down search 'to determine whether the person is … carrying a weapon.'" *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 24)). And, "'[a]lthough a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014); citation omitted).

To justify reasonable suspicion for a detention, an officer, rather than relying on hunches, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. And a court "look[s] at the facts known to the officers at the time," *United States v. Valdes*, 403 F. App'x 885, 889 (5th Cir. 2010) (per curiam) (footnote omitted), and "at 'the totality of the circumstances' in determining whether an officer had a particularized and objective basis for suspecting criminal activity," *United States v. Reyes*, 963 F.3d 482, 488 (5th Cir. 2020) (quoting *Glover*, 140 S. Ct. at 1191). This "analysis 'is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable

-15-

suspicion.'" *Id.* (quoting *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)).

Ellis cannot establish a constitutional violation of the Fourth Amendment based on the search and seizure of his person. Here, the Officers had more than reasonable suspicion to search and seize Ellis – they had probable cause. The Officers smelled marijuana coming from Ellis's open vehicle windows, and it is established law that the smell of marijuana coming from a vehicle is enough to provide probable cause. *See, e.g.*, *Bazan v. Whitfield*, 754 Fed. App'x 280, 281 (5th Cir. 2019) (per curiam) ("[T]he uncontroverted summary judgment evidence showed that [the officer] smelled marijuana emanating from the vehicle, which provided him with sufficient probable cause to conduct a warrantless search." (citing *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (holding that the smell of marijuana in a vehicle was – in itself – enough to justify the search of "the entire vehicle"); *United States v. Villareal*, 565 F.2d 932, 978 (5th Cir. 1978) (same))).

While the Officers' body cameras show that Ellis disagreed, asserting that the vehicle did not smell like marijuana, *see* Dkt. No. 24 (Garza bodycam footage at 7:50), this does not create a genuine dispute of material fact because that claim is "so utterly discredited by the record that no reasonable jury could have believed him," *Scott*, 550 U.S. at 378.

First, the fact that all three officers could smell marijuana was not some after-the-fact justification. Before and during Ellis's seizure (and prior to finding marijuana in his vehicle), both Officers Garza and Weinschreider told Ellis that his vehicle

smelled of marijuana. *See* Dkt. No. 21 at 9-10, 31. Moreover, while Ellis's vehicle was being searched, he admitted to Officer Weinschreider that marijuana was inside of the vehicle. *See id.* at 31.

In sum, because Ellis has not shown that the Officers violated his Fourth Amendment rights based on the search and seizure of his person, Ellis cannot establish that the Officers violated a clearly established right that any reasonable police officer would understand was a violation of federal law. Accordingly, the Officers are entitled to qualified immunity on this ground, and Ellis's Fourth Amendment claim against the Officers based on his alleged unlawful search and seizure should be dismissed with prejudice.

## B.    The facts from the record reflect that the Officers had probable cause to search Ellis's vehicle.

Although warrantless searches are per se unreasonable, the vehicle exception allows that "police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe it contains contraband or evidence of crime." *United States v. Wilson*, 510 F. App'x 339, 344 (5th Cir. 2013) (per curiam) (quoting *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993)). As explained above, the Officers had probable cause because they smelled marijuana coming from Ellis's vehicle. Therefore, the Officers' warrantless search was covered by the automobile exception. *See Reed*, 882 F.2d at 149 ("[T]he detection of the odor of marihuana justified a search of the entire vehicle, including the locked compartment that was a likely place to conceal contraband." (citation omitted)).

While Ellis argues in his pleadings that Officer Garza put her nose in his

vehicle to smell for marijuana, that argument cannot be considered because Ellis's pleadings are not under oath and therefore not competent summary judgment evidence. That said, based on Officer Weinschreider's body camera, it appears that Officer Garza put her nose close to the vehicle, but it is not definite that her nose went inside of his vehicle. *See* Dkt. No. 24 (Weinschreider bodycam footage at 0:43). It is therefore most likely that Ellis would not be able to prove a violation of his Fourth Amendment rights based on the search of his vehicle.

But, even if Ellis could successfully argue that the Officers' search was unreasonable because Officer Garza's nose went inside of Ellis's vehicle, that action alone would not be enough to show that the Officers violated clearly established law. Although it may be considered a constitutional violation for an officer to place a part of their body inside a vehicle, Ellis has not shown that such a violation of law is clearly established or an obvious violation of the Constitution.

On the contrary, courts have held, on a case-by-case basis, that officers putting their body into a vehicle constitutes a reasonable search. *See United States v. Ryles*, 988 F.2d 13, 15 (5th Cir. 1993) (an officer placing their head inside the vehicle through open window, even before smelling marijuana, did not amount to an unreasonable search); *see also United States v. Pierre*, 958 F.2d 1304, 1309-10 (5th Cir. 1992) (an officer conducted a reasonable search where they stuck their head inside a window to question individuals at a border checkpoint); *United States v. Marshall*, 878 F.2d 161, 163 (5th Cir. 1988) (an officer did not conduct an unreasonable search where they stuck their head into a vehicle after smelling

marijuana emanating from the vehicle).

In sum, Ellis has not shown that the Officers violated a clearly established right. Accordingly, the Officers should be granted summary judgment on qualified immunity as to this ground, and Ellis's Fourth Amendment claim based on the search of his vehicle should be dismissed with prejudice.

## C.    Ellis has not shown that the Officers violated a clearly established right by directing him to destroy the marijuana.

Ellis alleges an Eighth Amendment violation based on his being directed to destroy the marijuana or receive a citation. "The protections of the Eighth Amendment against cruel and unusual punishment are limited in scope to convicted prisoners." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Even so, and assuming that Ellis may be alleging some sort of due process violation based on his being directed to destroy the marijuana to avoid a citation, the confiscation of contraband (typically examined in the context of the Eighth Amendment) does not establish a due process violation. *See, e.g.*, *Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir. 1980) (per curiam); *Lyon v. Farrier*, 730 F.2d 525 527 (8th Cir. 1984) (per curiam); *Baker v. Piggott*, 833 F.2d 1539, 1540 (11th Cir. 1987) (per curiam). And Ellis has not established that the Officers violated a clearly established right that any reasonable police officer would understand was in violation of the Constitution. So the Officers should be granted summary judgment on qualified immunity as to this ground too, and Ellis's purported Eighth Amendment claim should be dismissed with prejudice.

## D.    The Court should deny Ellis's motions.

For all the reasons set out above, the Court should deny Ellis's motion to strike

the Officers' qualified immunity defense and deny his motion for summary judgment.

In sum, the reasons set out above showing that the Officers' good faith assertion of qualified immunity should be granted also show that Ellis has not established grounds to strike the defense. *See CarrollClean LLC v. ACE Am. Ins. Co.*, No. 3:21-cv-1359-N, 2022 WL 598243, at *2 (N.D. Tex. Feb. 28, 2022) (noting that, under Federal Rule of Civil Procedure 12(f), a court "may strike a defense as insufficient if the defense is insufficient as a matter of law or if the pleading fails to give fair notice of the defense raised" (citation omitted)); *see also Malibu Media, LLC v. Martin*, Civ. A. No. H-18-4425, 2019 WL 3802678, at *1 (S.D. Tex. Aug. 13, 2019) ("A plaintiff who desires 'early resolution of an affirmative defense may seek to strike it under Federal Rule of Civil Procedure 12(f).'" (quoting *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660-61 (5th Cir. 2016))).

Nor has Ellis shown that summary judgment should be granted in his favor on the Officers' assertions of qualified immunity where "[o]nce a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." *Batyukova*, 994 F.3d at 724. Understood another way, in the context of parties moving for summary judgment on their own claims or defenses, Ellis has not carried his burden to establish beyond peradventure that the Officers are not entitled to summary judgment on qualified immunity.

## Recommendation

The Court should deny Plaintiff Eric Ellis's motion to strike [Dkt. No. 16] and

motions for summary judgment [Dkt. Nos. 19, 20] and grant Defendants Officers Rubi Garza-Lopez and Brian Barrier's motion for summary judgment on qualified immunity [Dkt. No. 21], dismissing the claims against them – and this lawsuit – with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 1417 (5th Cir. 1996).

DATED: December 28, 2022

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE